# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1509

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Leon Bassham

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 14, 2019
Filed: March 6, 2019
[Unpublished]

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

While serving a term of supervised release, Kevin Leon Bassham was accused of touching the breast of an eleven-year-old girl who is diagnosed with an intellectual

delay. The district court[1] revoked Bassham's supervised release and sentenced him to 24 months' imprisonment followed by one year of supervised release. Bassham appeals, arguing that the court clearly erred in determining that he violated a condition of his supervised release and that his 24-month sentence is substantively unreasonable. We affirm.

In October 1997, a jury convicted Bassham of being a felon in possession of firearms, possession of stolen firearms, aiding and abetting the commission of a bank robbery, and conspiracy to commit a bank robbery. Bassham was sentenced to 240 months' imprisonment and three years of supervised release. He began serving his term of supervised release in February 2015, which was revoked in July 2016 because he failed to follow the probation office's instructions and comply with his supervised release terms. The district court sentenced him to eight months' imprisonment followed by a two-year term of supervised release. In January 2018, while again on supervised release, the United States Probation Office filed a petition alleging that Bassham had committed the new law violation of indecent contact with a minor, thereby violating his release conditions.

The district court heard evidence on the allegation at a revocation hearing in February 2018. The government first called the victim, then-twelve-year-old K.O. She testified that she and her mother had rented the upstairs apartment of a building owned by her mother's ex-boyfriend, Gregory Schminkey, who lived in the downstairs apartment. K.O. had permission to move freely throughout the home. On one occasion, K.O. went downstairs to change her cat's litter box. Bassham, a friend of Schminkey's, was also in the apartment. K.O. testified that she changed the litter box and then sat on the couch in the living room, whereupon Bassham joined her and reached his hand under her clothing, touching her breast. She recounted that

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Bassham touched her twice but said that she did not recall the second time. She testified that she had told the school nurse about the incident and that she had reported only one touching in a different interview.

The court then heard from K.O.'s school nurse, Shukrije Ramku, who had initially met with K.O. to discuss parental abuse and K.O.'s black eye. Ramku testified that K.O. told her that her mother had kicked her in the ribs. When asked if anything else was going on at home, K.O. told Ramku that Bassham had twice touched her in "this area," pointing to her breasts. Brenda Bartz, from the Iowa Department of Human Services, also spoke with K.O. and later observed her interview at the UnityPoint Child Protection Center (CPC). Bartz testified that K.O. said Bassham had touched her "here" and waved her hand over her breast area. K.O. told Bartz that the contact was "skin to skin" and had happened twice. Bartz also testified that K.O. is diagnosed with an intellectual delay and receives special education at school. When asked about K.O.'s reputation for truthfulness, Bartz testified that K.O. was "very matter of fact" in her interviews, that she had never known K.O. to be dishonest with her, and that "both [K.O.'s teacher and school principal] indicated that she was a very truthful person." Bartz also recalled discussing potential parental abuse and K.O. stating that her mom accidentally gave her a black eye.

Deputy Douglas VanBennekom with the Iowa County Sheriff's Office testified that he and Bartz had interviewed Bassham, who denied touching K.O.'s breasts. Bassham told VanBennekom that he and K.O. regularly hugged and that K.O.'s mother was verbally and possibly physically abusive towards her. VanBennekom also testified that he had interviewed K.O.'s mother, who had accused K.O. of stealing and lying in the past. The government also played a video of K.O.'s CPC interview, which both Bartz and VanBennekom had observed from a different room, wherein she recounted that the defendant touched her breasts with his hand while they

were seated on the living room couch. K.O. mentioned only one incident during this interview.

Bassham called Schminkey, who testified that he was Bassham's coworker and let Bassham park in his driveway on workdays. Thus, Bassham frequently visited his home. He testified that Bassham and K.O. had a "daughter and father" relationship and that K.O.'s mother was verbally and physically abusive towards her. He testified that he had known K.O. to lie and steal, and mentioned two occasions when K.O. stole his property and lied about doing so.

At the conclusion of evidence, the court revoked Bassham's supervised release and imposed its 24-month sentence, stating that it found K.O. to be credible and that the government had proved by a preponderance of the evidence that Bassham committed the offense of indecent contact with a child in violation of Iowa Code § 709.12(1)(a). See United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003) ("If the government proves by a preponderance of the evidence that a defendant violated a condition of supervised release . . . the district court has discretion to revoke supervised release.").

Bassham argues that the court clearly erred by crediting K.O.'s testimony and thus in finding that he had committed a new law violation. He contends that K.O. offered inconsistent statements regarding the incident and her mother's abusive behavior, that she had lied and stolen her landlord's possessions in the past, that she was only twelve years old and developmentally disabled at the time of the hearing, and that her testimony regarding the incident was incomplete. We review for clear error the court's fact-finding as to whether a violation occurred, id., and will reverse a revocation decision "only if we have 'a definite and firm conviction that the District Court was mistaken.'" United States v. Petersen, 848 F.3d 1153, 1156 (8th Cir. 2017) (quoting United States v. Boyd, 792 F.3d 916, 919 (8th Cir. 2015)).

We conclude that the court did not clearly err in crediting K.O.'s testimony. It explained:

> Challenges to the credibility of this child were not successful. In her school, she had a reputation for truthfulness, and as I watched her testify, she was, as the teachers would say, was very matter of fact about it; didn't embellish, answered the questions. The inconsistency about whether this happened one time or two times was explained and so the Court was not bothered about that at all. It seems to me that the only person challenging this child might be her own mother, which is sad, but given the history and characteristics of the mother as revealed in the evidence, I'm not particularly surprised.

Credibility determinations are the province of the district court at revocation hearings and as such are "virtually unreviewable on appeal." Carothers, 337 F.3d at 1019 (quoting United States v. Hernandez, 281 F.3d 746, 748 (8th Cir. 2002)). The evidence presented, including that K.O. recounted the incident four times, that she told a predominantly consistent story each time, and that she is known to be truthful at school does not leave us with a "definite and firm conviction" that the court mistakenly found her to be credible. Id.

Bassham also argues that the court abused its discretion in imposing a 24-month sentence by failing to fully and fairly consider the 18 U.S.C. § 3553(a) factors. See Peterson, 848 F.3d at 1157 (standard of review). Bassham contends that the court ignored the "tepid nature of the Government's evidence," his lack of other violations while on supervised release, and his gainful employment since August 2017. A district court abuses its discretion if it "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." Id. (quoting United States v. Lozoya, 623 F.3d 624, 626 (8th Cir. 2010)).

We conclude that the district court did not abuse its discretion. It explained that it had carefully considered the § 3553(a) factors and particularly those applicable to revocation proceedings; that Bassham was originally convicted of several serious crimes; that he has had "a very serious life of crime and serious criminal behavior while in the community"; that the offense at issue "against a 12-year-old learning-disabled or learning-challenged child is really reprehensible"; that the victim likely lacked proper supervision and support from her mother and was therefore vulnerable; that Bassham had never been successful on supervision; that "he was able to maintain, as far as we know, a fairly stable existence, but that was for a period of less than 1 year"; and, finally, that "[t]here's nothing to offer him in the community at this stage that hasn't already been offered." This is not the unusual case in which a sentence is substantively unreasonable. See Petersen, 848 F.3d at 1157.

The judgment is affirmed.

_____